CALEB R. TROTTER, Cal. Bar No. 305195
Email: CTrotter@pacificlegal.org
WILSON C. FREEMAN, Ariz. Bar No. 036953*
Email: WFreeman@pacificlegal.org
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

*Attorneys for Plaintiffs*

*\*pro hac vice application forthcoming*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| 1517 MANAGEMENT COMPANY, LLC; 1517 FUND I, L.P.; 1517 FUND II, L.P.; 1517 FUND III, L.P.; and 1517 FUND IV, L.P., | No. 2:26-at-906 |
| Plaintiffs, | **COMPLAINT** |
| v. | |
| KHALIL "KC" MOHSENI, in his official capacity as the Commissioner of the California Department of Financial Protection and Innovation, | |
| Defendant. | |

Complaint

**JURISDICTION AND VENUE**

1.     This action arises under the First and Fourteenth Amendments to the United States Constitution, the Dormant Commerce Clause of Article I, Section 8, Clause 3 of the United States Constitution, and 42 U.S.C. § 1983. This Court has jurisdiction over these federal claims under 28 U.S.C. §§ 1331 (federal question) and 1343(a) (redress for deprivation of civil rights). Declaratory relief is authorized by the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

2.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred or will occur in this district.

**INTRODUCTION**

3.     In 2023, California enacted the Fair Investment Practices by Venture Capital Companies Law (FIPVCC). The FIPVCC, amended in 2024, requires venture capital funds to survey the small companies to which they have provided funding and report on the race, ethnicity, gender identity, and sexuality of their founders.

4.     This law is unconstitutional three times over. First, because it compels venture capital funds to survey their founders on race, ethnicity, sex, gender identity, and sexuality when they otherwise would remain silent. Second, because it seeks to compel indirectly what the state cannot compel directly: force venture capital funds to consider race and sex in their funding decisions. And third, because it reaches far outside the borders of the state to regulate conduct with no nexus to California.

5.     Plaintiffs, collectively "1517 Fund," are a venture capital fund that specializes in providing funds to extremely early stage founders; they seek out young people, the uncredentialed, and renegade scientists and help them get their ideas off the ground to advance science and civilization. They bring this lawsuit to prevent the violation of their Constitutional rights that FIPVCC imposes.

**PARTIES**

6.     Plaintiff 1517 Management Company, LLC ("1517 Management") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Colorado. 1517 Management serves as the investment adviser and management

Complaint                                    2

company for each of the four limited partnership funds described below.[1]

7.     Plaintiff 1517 Fund I, L.P., is a limited partnership organized under the laws of the State of Delaware, with its principal place of business in Colorado. 1517 Fund I has no employees; all investment, administrative, and compliance functions are performed by 1517 Management. 1517 Fund I makes venture capital investments in early-stage operating companies and qualifies as a "venture capital company" within the meaning of Cal. Corp. Code § 27500(g).

8.     Plaintiff 1517 Fund II, L.P., is a limited partnership organized under the laws of the State of Delaware, with its principal place of business in Colorado. 1517 Fund II has no employees; all investment, administrative, and compliance functions are performed by 1517 Management. 1517 Fund II qualifies as a "venture capital company" within the meaning of Cal. Corp. Code § 27500(g).

9.     Plaintiff 1517 Fund III, L.P., is a limited partnership organized under the laws of the State of Delaware, with its principal place of business in Colorado. 1517 Fund III has no employees; all investment, administrative, and compliance functions are performed by 1517 Management. 1517 Fund III qualifies as a "venture capital company" within the meaning of Cal. Corp. Code § 27500(g).

10.     Plaintiff 1517 Fund IV, L.P., is a limited partnership organized under the laws of the State of Delaware, with its principal place of business in Colorado. 1517 Fund IV has no employees; all investment, administrative, and compliance functions are performed by 1517 Management. 1517 Fund IV qualifies as a "venture capital company" within the meaning of Cal. Corp. Code § 27500(g).

11.     Defendant Khalil "KC" Mohseni is the Commissioner of the California Department of Financial Protection and Innovation ("DFPI") and is responsible for enforcing the FIPVCC. The Commissioner is sued in his official capacity.

[1] Each of the four L.P. funds associated with 1517 Fund appear to be regulated by the FIPVCC but 1517 Management is the entity that is responsible for making the surveys and providing them to the California Department of Financial Protection and Innovation on behalf of the funds.

Complaint                    3

<u>**FACTUAL ALLEGATIONS**</u>

**The Fair Investment Practices by Venture Capital Companies Law**

12.     The FIPVCC requires venture capital companies that meet certain criteria to submit an "aggregated" annual report to DFPI on the race, ethnicity, gender identity, LGBTQ+ status, veteran status, and California residency of each founding team member for every business funded by a venture capital company. Cal. Corp. Code § 27501(b).

13.     The report must also list the proportion of a venture capital company's investments in businesses primarily founded by "diverse founding team members," meaning a business founded by someone who self-identifies as a "woman, nonbinary, Black, African American, Hispanic, Latino-Latina, Asian, Pacific Islander, Native American, Native Hawaiian, Alaskan Native, disabled, veteran or disabled veteran, lesbian, gay, bisexual, transgender, or queer." Cal. Corp. Code §§ 27500–27501.

14.     A venture capital company is covered by this provision if they primarily engage in the business of providing funding to early-stage or emerging companies and the company is either headquartered in California, has a significant presence or operational office in the state, makes venture capital investments in businesses that are located in, or have significant operations in, California, or they solicit or receive investments from California residents. Cal. Corp. Code § 27500(b).

15.     Venture capital companies must obtain the information to make the mandated reports by sending a regular survey to the founders of the businesses they fund. Cal. Corp. Code § 27501(c).

16.     The survey must be on a form provided by DFPI. Cal. Corp. Code § 27501(c). The current form is attached to this Complaint as Exhibit A. The founders must return the form to the venture capital company so it can report the results.

17.     DFPI must make the reports readily accessible to the public and easily searchable on its website and may use the information to investigate venture capital companies for alleged civil rights violations. Cal. Corp. Code § 27502.

18.     Failure to make the required reports, or any untrue statement in a report, is

Complaint                                      4

punishable by significant monetary penalties ($5000 per day per violation). Cal. Corp. Code § 27504.

### The Purpose and Effect of the FIPVCC

19. The intent of the FIPVCC is to alter venture capital funding behavior by pressuring firms to consider race, ethnicity, sex, and sexuality in investment decisions.

20. Before the Senate Rules Committee in 2023, analyses of the bill (SB 54) emphasized that the purpose of the law was to repair supposed racial disparities in venture capital funding, explaining that "startups founded by Black and Latinx individuals received only 2.6% and 0.6% of venture capital funding, respectively." [2]

21. The analyses further explained that the public reporting and pressure imposed by the bill may force venture funders to "reconsider how they source potential deals and make investment decisions, in an attempt to remedy the stark disparities in the industry." [3]

22. When it was passed, the principal sponsor of the bill reaffirmed this purpose, stating in her press release on the bill's signing that it was "designed to help more women- and minority-owned startups access vital VC funding" and to "boost investment" for "women- and minority-owned startups." The principal sponsor further identified the problem that the bill sought to solve as that "VC investments are disproportionately allocated to companies launched by white men." [4]

23. In a separate interview, she explained how the bill pressures venture capital companies because "[s]unshine sometimes works to change behavior." [5]

24. Similarly, Governor Newsom, in his signing letter to the California State Senate, hailed the bill as resonating deeply with his "commitment to advance equity and provide for greater

[2] Senate Rules Committee, Unfinished Business SB 54 (Sep. 6, 2023), https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=202320240SB54#.
[3] *Id.*
[4] Press Release, "Skinner's Bill to Boost Investment in Women- and Minority-Owned Startups Wins Approval from CA Legislature," Nancy Skinner Representing Senate District 09 (Sep. 13, 2023), https://web.archive.org/web/20240320161529/https://sd09.senate.ca.gov/news/20230913-skinners-bill-boost-investment-women-and-minority-owned-startups-wins-approval-ca.
[5] Dan Primack, California will require VC firms to report founder diversity statistics, Axios (Oct. 10, 2023), https://www.axios.com/2023/10/10/california-venture-capital-report-diversity-founders.

economic empowerment of historically underrepresented communities" and emphasized that the purpose of the bill was to "improve the diversity of venture capital investments." [6]

25.    The bill's drafters and advocates have stated that the law's purpose is to generate publicly accessible "diversity scores" for venture capital firms and to enable third parties—including limited partners, founders, and the public—to compare and pressure firms based on the demographic composition of the founders they fund. The F5 Collective, an advocate for and contributor to the drafting of the law, stated that "[p]ublic oversight will encourage funds to enhance their [diversity] scores and facilitate better government oversight." The FIPVCC compels venture capital firms to maintain and report race-, sex-, and gender-based classifications and exerts pressure on the firms to alter investment behavior accordingly. [7]

26.    Whatever the merit of the legislature's stated purpose, FIPVCC's mechanism for addressing the perceived disparity is to require venture capital firms to engage in mandatory racial, ethnic, gender, and sexual-orientation classification of the founders of their portfolio companies; to publicly report the racial, ethnic, gender, and sexual-orientation composition of their investment portfolios; and to alter their future investment decisions in response to public pressure based on those classifications.

27.    The FIPVCC also imposes pressure through direct oversight from venture capital companies' primary regulator, which is expressly empowered to use the information collected against the venture capital company subjecting them to potential enforcement actions based on the same demographic data; venture capital companies can rightly fear that deviations from DFPI's preferred racial balance could lead to accusations of discrimination or disparate impact lawsuits.

28.    Accordingly, the FIPVCC uses public reporting, demographic classifications, and regulatory oversight to pressure venture capital firms to conform their investment behavior to state-preferred demographic outcomes.

---

[6]    Governor Gavin Newsom, Signing Statement on SB54 (Oct. 8, 2023), https://www.gov.ca.gov/wp-content/uploads/2023/10/SB-54-SIGN-MSG.pdf.
[7] F5 Collective Sponsors USA's First VC Diversity Bill: Here's What You Need To Know, https://f5collective.com/f5-collective-sponsors-usas-first-vc-diversity-bill-heres-what-you-need-to-know/.

29. Furthermore, the FIPVCC's mandatory data collection compels venture capital companies to have uncomfortable conversations with their founders about sensitive topics.

30. These conversations involve discussions and disclosures which are controversial and can involve matters of personal identity and politicized disagreement, including disagreement about how the categories should be defined, who they should include, and whether they should be the basis for governmental classification at all.

31. These conversations and compelled surveys have no connection whatsoever to the services that venture capital companies in general, and 1517 Fund in particular, provide.

32. As explained above, the purpose of these compelled disclosures is to alter the investment behavior of venture capital firms by exposing their investment patterns to public comparison and pressure, not to protect consumers, investors, or the public.

33. Venture capital companies cannot even collect the information in a manner of their choosing; they must structure their data collection and conversation with their founders around the form and specific language provided by DFPI.

34. The FIPVCC has an enormous geographical sweep. The law's definition of covered entity sweeps in not only venture capital companies in California, but even those across the nation which merely direct investment into a California startup, no matter how small the investment may be.

35. Once a venture capital company is swept in as a "covered entity," the law does not distinguish between their California investments and investments with no connection at all to the state.

36. In fact, venture capital companies are required to report on the "diversity" of all their founders, even those with no connection to California, as long as the venture capital company has sufficient minimum contacts with California as mandated by the FIPVCC.

**The FIPVCC Compels 1517 Fund's Speech and Pressures Them to Discriminate**

37. 1517 Fund is working with young founders and early emerging companies. It often works with founders who do not even yet know whether they should be seeking out venture capital.

38. Since its inception in 2015, 1517 Fund has invested over $175 million, funded over

Complaint                                      7

15 special purpose vehicles, and built a community of over 6,000 entrepreneurs, advisers, and supporters.

39. The founders and managers of 1517 Fund believe in meritocracy and are strongly opposed to discrimination based on an individual's immutable characteristics. 1517 Fund's mission embraces the idea that outstanding founders are found regardless of credentials and even in the oddest of places, and that the edges of technology and science can and often are advanced by those least likely to be recognized by sclerotic institutions.

40. 1517 Fund's investment decisions are and have always been made on the basis of merit, without regard to race, ethnicity, gender, gender identity, sexual orientation, disability, or veteran status. 1517 Fund does not ask its founders about these characteristics, does not collect or maintain data on these characteristics, and does not consider these characteristics in any aspect of its investment process.

41. FIPVCC requires 1517 Fund to abandon this practice. The statute compels 1517 Fund to ask each founder of every portfolio company about the founder's race, ethnicity, gender identity, sexual orientation, disability status, and veteran status, and to transmit the resulting data to the State of California for public publication.

42. 1517 Fund presently objects, and would object regardless of any future enforcement action, to administering the FIPVCC survey, to communicating with founders about race, ethnicity, gender identity, and sexual orientation in the manner the statute requires, and to using the State-prescribed form for any such communication. If forced to conduct a survey at all, 1517 Fund would communicate with its founders in its own way and on its own terms.

43. FIPVCC presently affects 1517 Fund's ability to communicate its mission and values. The firm's public identity as a meritocratic, identity-blind investor is undermined by the statutory requirement that the firm participate in racial classification of its founders. 1517 Fund cannot accurately represent its investment philosophy to founders, limited partners, or the public while it is simultaneously required to administer a state-mandated demographic-classification regime.

44. FIPVCC presently affects 1517 Fund's investment-planning decisions. Each

Complaint                                    8

investment 1517 Fund makes today will be subject to FIPVCC's reporting obligations next year if the statute is implemented in any form. 1517 Fund cannot make current investment decisions without taking into account whether and how those investments will be reported, whether founders will be willing to participate in the demographic survey, and whether a diversity index will compel them to make changes to their strategy.

45.     Furthermore, 1517 Fund is currently incurring costs to prepare for FIPVCC compliance. These costs are ongoing and recurring; they will not be recovered if the statute is later invalidated.

### DFPI's Rulemaking and Unanswered Questions

46.     On March 17, 2026, DFPI announced it was suspending implementation and enforcement of the FIPVCC pending a formal rulemaking.

47.     DFPI expressly stated that it would not require covered entities to submit further registrations or file reports by the statutory April 1, 2026, deadline.

48.     The purpose of the rulemaking is to "craft statewide regulations for the law with the goal of promoting clarity, collaboration, and transparency."[8]

49.     The rulemaking may clarify disputed questions in the interpretation of the statute, such as whether each separate fund entity qualifies as a "covered entity" which must make a separate report, or whether a management entity may make one report for an entire fund, or whether venture capital companies with no investments in the last year must make a report.

50.     However, the rulemaking cannot override the statutory mandates cited above.

51.     In addition, the rulemaking cannot affect the statutory requirement to survey businesses in the calendar year prior to April 1, 2026. Cal. Corp. Code § 27501(b)(1).

52.     Furthermore, DFPI has never disclaimed enforcement authority with respect to the April 1, 2026, deadline.

53.     Because of the FIPVCC, 1517 Fund is presently forced to structure its investment

---

[8] *Who Should Report?*, DFPI, https://dfpi.ca.gov/regulated-industries/vcc-reporting-program/who-should-report/ (last accessed May 26, 2026).

Complaint                                        9

relationships and compliance practices around the expectation that the demographic characteristics of its founders will be collected, reported, and publicly disclosed.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

### Violation of the First Amendment Right to Freedom of Speech

### (42 U.S.C. § 1983)

54.     Plaintiffs reallege and incorporate by reference all allegations contained in the paragraphs 1–53.

55.     The First Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment, protects Plaintiffs from having to survey the founders they invest in about race, ethnicity, gender, and sexuality.

56.     The First Amendment further protects Plaintiffs from having to use state-mandated forms to communicate with their founders about these issues.

57.     On its face, the FIPVCC compels Plaintiffs to speak when they otherwise would remain silent.

58.     Furthermore, the FIPVCC is a content-based restriction on Plaintiffs' freedom of speech because it prevents them from communicating on the issue in their preferred fashion and requires them to use a specific form with specific content.

59.     Neither the FIPVCC's mandatory survey nor its mandatory form are narrowly tailored nor are they supported by any compelling interest, so they cannot survive strict scrutiny.

60.     By requiring 1517 Fund to regularly survey their founders about sensitive topics like race, ethnicity, gender, and sexuality, and to communicate via a specified form, Defendant maintains and actively enforces a set of laws, practices, policies, and procedures under color of state law that deprives Plaintiffs of their right to free speech, in violation of the First Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment and 42 U.S.C. § 1983.

61.     Plaintiffs have no adequate remedy at law to compensate for the loss of their freedom of speech and will suffer irreparable injury absent an injunction prohibiting the compelled

Complaint                                              10

speech required under the FIPVCC.

62. Plaintiffs are therefore entitled to prospective declaratory and permanent injunctive relief from the mandates of the FIPVCC.

## SECOND CAUSE OF ACTION

### Violation of the Equal Protection Clause

### (42 U.S.C. § 1983)

63. Plaintiffs reallege and incorporate by reference all allegations contained in the paragraphs 1–62.

64. Under the Fourteenth Amendment, no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

65. The FIPVCC violates the Fourteenth Amendment's Equal Protection Clause because it, on its face, requires venture capital companies to consider race. Further, it pressures those companies to place prospective founders at a disadvantage strictly on the basis of their race.

66. All race-based governmental action is subject to strict scrutiny.

67. The FIPVCC's consideration of race is neither narrowly tailored nor is it supported by any compelling interest.

68. By requiring 1517 Fund to administer a racial classification scheme as a condition of operating their venture capital business, and by exerting pressure on Plaintiffs—through public ranking of venture capital firms by the racial composition of the founders they fund—to alter their investment decisions to favor founders of particular races, Defendant maintains and actively enforces a set of laws, practices, policies, and procedures under color of state law that forces Plaintiffs to participate in and administer a state-mandated racial classification system as a condition of operating their venture capital business.

69. Plaintiffs have no adequate remedy at law to compensate for the loss of their right to equal protection and will suffer irreparable injury absent an injunction prohibiting the compelled speech required under the FIPVCC.

70. Plaintiffs are therefore entitled to prospective declaratory and permanent injunctive relief from the mandates of the FIPVCC.

Complaint                                             11

## THIRD CAUSE OF ACTION

### Violation of the Dormant Commerce Clause

### (42 U.S.C. § 1983)

71.    Plaintiffs reallege and incorporate by reference all allegations contained in the paragraphs 1–70.

72.    The Commerce Clause of Article I, Section 8, Clause 3 of the United States Constitution, in its dormant aspect, prohibits a State from directly regulating commercial transactions that take place wholly outside the State's borders and that involve persons having no connection with the State.

73.    The Commerce Clause likewise prohibits a State from projecting its regulatory authority into other States such that, if every State enacted similar regulation, interstate commerce would be subjected to inconsistent and conflicting demands.

74.    A vast majority of the businesses in which 1517 Fund (a Colorado company) has invested are headquartered, incorporated, and principally operating outside the State of California.

75.    The FIPVCC asserts that the contact between a venture capital company and at least one California business is enough of a hook to impose regulatory obligations reaching transactions, persons, and conduct lacking any significant contact with California. This exceeds the state's authority.

76.    On its face, the FIPVCC compels 1517 Management (a Colorado company) to demand demographic information from individuals who have no connection to California, concerning their ownership of and participation in businesses that have no connection to California, for transmission to a California state agency and for publication on a California state website.

77.    If California may impose this regulation, every other State may enact parallel demographic-reporting regimes reaching nationwide on the basis of attenuated contacts with the regulated entity, subjecting Plaintiffs and similarly situated venture capital companies to fifty conflicting regulatory demands concerning the same out-of-state founder.

78.    By regulating transactions occurring wholly outside California and involving persons having no connection with California, Defendant maintains and actively enforces a set of

Complaint                                    12

laws, practices, policies, and procedures under color of state law that violate the Commerce Clause of the United States Constitution and 42 U.S.C. § 1983.

79.    Plaintiffs have no adequate remedy at law and will suffer irreparable injury absent an injunction prohibiting Defendant's enforcement of the FIPVCC as applied to venture capital companies and founding team members lacking significant contacts with California.

80.    Plaintiffs are therefore entitled to prospective declaratory and permanent injunctive relief against continued enforcement of FIPVCC as applied to venture capital companies and founding team members lacking significant contacts with California.

**FOURTH CAUSE OF ACTION**

**Violation of the Due Process Clause**

**(42 U.S.C. § 1983)**

81.    Plaintiffs reallege and incorporate by reference all allegations contained in the paragraphs 1–80.

82.    The Due Process Clause of the Fourteenth Amendment to the United States Constitution forbids a State from extending its regulatory authority to persons, conduct, or transactions lacking significant contacts with the State.

83.    The Constitution recognizes the States as co-equal sovereigns. The structural design of the Constitution forbids any State from projecting its sovereign authority into the territory of another State to regulate persons, conduct, or transactions occurring wholly outside the regulating State's borders.

84.    A vast majority of the businesses in which 1517 Fund has invested are headquartered, incorporated, and principally operating outside the State of California.

85.    The FIPVCC asserts that the contact between a venture capital company and at least one California business is enough of a hook to impose regulatory obligations reaching transactions, persons, and conduct lacking any significant contact with California. This exceeds the state's authority.

86.    On its face, the FIPVCC compels 1517 Management, a Colorado company, to demand demographic information from individuals who have no connection to California,

Complaint                                              13

concerning their ownership of and participation in businesses that have no connection to California, for transmission to a California state agency and for publication on a California state website.

87. By extending its regulatory authority to persons, conduct, and transactions lacking significant contacts with California, Defendant maintains and actively enforces a set of laws, practices, policies, and procedures under color of state law that deprive Plaintiffs of their right to due process, in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

88. Plaintiffs have no adequate remedy at law and will suffer irreparable injury absent an injunction prohibiting Defendant's enforcement of the FIPVCC as applied to venture capital companies and founding team members lacking significant contacts with California.

89. Plaintiffs are therefore entitled to prospective declaratory and permanent injunctive relief against continued enforcement of the FIPVCC as applied to venture capital companies and founding team members lacking significant contacts with California.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

A. A declaration that Cal. Corp. Code § 27500 *et seq.*, on its face and as applied to Plaintiffs, violates the Commerce Clause of Article I, as well as the First and Fourteenth Amendments to the U.S. Constitution;

B. A permanent injunction restraining Defendant and Defendant's officers, agents, affiliates, servants, successors, employees, and all other persons in active concert or participation with Defendant from enforcing Cal. Corp. Code § 27500 *et seq.*, against Plaintiffs;

C. Judgment for Plaintiffs and against Defendant for the deprivation of Plaintiffs' rights;

D. An award of attorney fees, costs, and expenses in this action pursuant to 42 U.S.C. § 1988; and

E. Any further relief as the Court may deem just, necessary, or proper.

Complaint                                        14

DATED: May 28, 2026.

Respectfully submitted,

CALEB R. TROTTER
WILSON C. FREEMAN*
PACIFIC LEGAL FOUNDATION

By  /s/ Caleb R. Trotter
       CALEB R. TROTTER

*Attorneys for Plaintiffs*

*pro hac vice application forthcoming*

Complaint                                    15